IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No. 12-cv-00553-WYD

RICHARD A. OVERTON,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

**ORDER**

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's Application for Supplemental Security Income Benefits ["SSI"] under Title XVI of the Social Security Act ["the Act"]. For the reasons stated below, this case is reversed and remanded to the Commissioner for further fact finding.

I.    BACKGROUND

Plaintiff applied for SSI in September 2009 alleging disability due to gout, arthritis, and a heart condition. (Transcript ["Tr."] at 47.) After his application was denied (*id.* 43), Plaintiff timely requested a hearing. The hearing was held in April 2011. (*Id.* 7-21). He was 32 years old at that time. (*Id.* 16.) Following the hearing, the ALJ issued a decision finding that Plaintiff was not disabled. (*Id.* 22-45.)

At step one of the sequential evaluation process, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. (Tr. 12, finding 1.) At step two, the ALJ found that Plaintiff has severe impairments of gouty arthritis and

polysubstance abuse. (*Id.*, finding 2.) At step three, the ALJ found that the impairments do not meet a Listing. (*Id.* 13, finding 3.)

The ALJ then assessed Plaintiff's residual functional capacity ["RFC"]. She found that Plaintiff has the capacity to perform light work with the following limitations: simple, unskilled work with a specific vocational preparation of one or two; could lift or carry ten pounds frequently and twenty pounds occasionally; could stand and/or walk, with normal breaks, for a total of four to six hours in an eight hour workday; could sit, with normal breaks, for a total of six to eight hours in an eight hour workday; could perform pushing and pulling motions with his upper and lower extremities within the aforementioned weight restriction; could perform activities requiring bilateral manual dexterity for both fine and gross manipulation with handling and reaching except during gout attacks, when such manipulative activities would be restricted to frequently. (Tr. 13, finding 4.)

At step four, the ALJ found that Plaintiff has no past relevant work. (Tr. 16, finding 5.) Thus, she proceeded to step five where she found based on the vocational expert's testimony that Plaintiff is not disabled as he is able to perform other jobs that exist in significant numbers in the national economy. (*Id.* 16-17.)

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final. (Tr. 1-5). This appeal followed.

Plaintiff argues that the standing/walking capacity in the ALJ's RFC finding is too imprecise to generate accurate vocational expert testimony, and that the ALJ failed to properly assess Plaintiff's need to take hourly breaks and manipulative restrictions. Plaintiff also argues that the ALJ's mental RFC finding is not sufficiently specific.

II.     ANALYSIS

    A.     Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

    B.     Whether the ALJ Erred in the RFC Assessment

        1.     Need for Hourly Breaks

I first address Plaintiff's argument that the ALJ did not properly assess his need to take hourly breaks. Plaintiff asserts on that issue that the ALJ erred because she found that Plaintiff needs to take normal breaks, despite the opinion of Dr. Loveridge that was purportedly given great weight by the ALJ which indicated that Plaintiff needs breaks every hour. This is significant according to Plaintiff since the ALJ found that he can only perform unskilled work, which arguably would not allow for additional breaks. I agree that the ALJ erred on this issue.

Consultative examiner Dr. Loveridge found that Plaintiff needed hourly breaks. The ALJ stated that she gave "great weight" to Dr. Loveridge's opinion as his "interview and examination supported the ultimate findings", and that she incorporated all of Dr. Loveridge's limitations into the RFC. (Tr. 16.) However, the ALJ failed without explanation to include Dr. Loveridge's opinion as to breaks, instead finding that Plaintiff needed only normal breaks. (*Id.* 15.)

While "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question", '[a]n ALJ is not entitled to pick and choose through an uncontroverted medical opinion, taking only the parts that are favorable to a finding of nondisability.'" *Chapo v. Astrue*, 682 F.3d 1285, 1288, 1292 (10th Cir. 2012) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). Thus, an ALJ cannot, as here, discount a portion of a physician's limitations "with no explanation at all as to why one part of his opinion was creditable and the rest was not." *Id.* Indeed, since Plaintiff is limited to unskilled work, the need for hourly breaks may significantly impact his ability to work. Accordingly, a remand is required so that the ALJ can properly consider the need for hourly breaks and explain her findings relative to same.

In making this finding, I reject the Commissioner's argument that the ALJ had other evidence to reject Dr. Loveridge's opinion concerning breaks. This contradicts the ALJ's decision to give great weight to that opinion, and is an improper post hoc argument. *Robinson v. Barnhart*, 366 F.3d 1078, 1084-1085 (10th Cir. 2004). I also note that while the Commissioner points to Plaintiff's activities of daily living as supporting a need only to take normal breaks, the record is devoid of any information about how many breaks Plaintiff

takes while performing these activities. The ALJ never inquired about this. The only evidence in the record concerning Plaintiff's need to takes breaks is from Dr. Loveridge.[1]

### 2. Manipulative Restrictions

Plaintiff also asserts that the ALJ failed to properly assess his manipulative restrictions. He argues that this is important because some of the jobs identified by the vocational expert require significant fingering. I agree with Plaintiff that the ALJ erred in connection with her findings regarding Plaintiff's manipulative limitations.

On that issue, consultative examiner Dr. Loveridge opined that "[m]anipulative restrictions are expected with gout attacks with fingering, grasping, and pulling." (Tr. 191.) The ALJ stated that she assessed all of Dr. Loveridge's limitations due to Plaintiff's gouty arthritis. (*Id.* 15.) She inexplicably did not, however, include in the RFC his restrictions for fingering and grasping. Further, she did not assess any restrictions as to Plaintiffs' ability to perform pulling during a gout attack, as opined by Dr. Loveridge. This was error. *Haga*, 482 F.3d at 1208 (the ALJ must explain why he or she adopts some restrictions but not others in an uncontradicted medical opinion).

Instead, the ALJ found that Plaintiff could perform activities requiring bilateral manual dexterity for both fine and gross manipulation with handling and reaching except during gout

---

[1] Finally, I reject the Commissioner's argument that Plaintiff failed to show that hourly breaks are "drastically different" from normal breaks. In his Reply, Plaintiff points out that according to the Colorado Department of Labor and Employment, "a compensated ten-minute rest period for each four hours or major fractions thereof shall be permitted for all employees." See http://www.colorado.gov /cs/Satellite/ CDLE-LaborLaws/CDLE/1248095305420. Additionally, the Colorado Department of Labor and Employment requires that employees be entitled to an uninterrupted and duty free meal period of at least a thirty minute duration when the scheduled work shift exceeds five consecutive hours of work. *Id.* Thus, in Colorado, normal breaks mean two ten minute breaks and one thirty minute break per eight-hour workday. Dr. Loveridge opined that Plaintiff requires breaks every hour (Tr 191), which would require five additional breaks per workday than a normal employee would be entitled to. At ten minutes per break, Plaintiff would be entitled to fifty additional minutes of breaks each day.

attacks, when such manipulative activities would be restricted to frequently.  The ALJ did not state how she reached her conclusion on this issue, or how she found that Plaintiff would frequently be able to perform these manipulative activities during a gout attack.  It was not supported by Dr. Loveridge's opinion, as he did not address to what extent Plaintiff would have manipulative limitations.  He also did not specifically address reaching and handling.

While the Commissioner argues that there was evidence in the record to support the ALJ's RFC finding regarding Plaintiff's manipulative activities during a gout attack, I have found no such evidence.  In fact, Plaintiff testified that he is unable to grip when he is having a gout attack in his hands. (Tr. 40.)  Further, Plaintiff's treating provider Ginger Todd, PA-C, found that Plaintiff could rarely reach, handle, or finger with either upper extremity.  (*Id.* 208.)  Michael Barris, M.D., Ms. Todd's supervising physician, agreed with her assessment of plaintiff's physical limitations.  (*Id.* 238.)  While the ALJ rejected Ms. Todd's opinions on the basis that she "assess[ed] a startling number of extreme limitations which were simply not supported by the record or claimant's lifestyle", the Tenth Circuit has made clear that an ALJ "'may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*"  *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (emphasis in original) (quotation omitted).  Also, the fact that Plaintiff performs daily activities does not address what impact a gout attack may have on manipulative activities.  Indeed, Plaintiff testified that his ability to engage in activities is impacted by his gout attacks which happen three times per month and last three to four days each.  (*Id.* 31, 32, 39.)

Based on the foregoing, I find that the ALJ erred by failing to explain why she failed to include Dr. Loveridge's manipulative restrictions in the RFC when she purportedly gave great weight to his opinion. I also find that the ALJ erred by failing to explain what evidence she relied on in making the RFC finding as to Plaintiff's manipulative capacity. Accordingly, I am unable to adequately review it to determine if it is supported by substantial evidence. A remand is thus required for further fact finding. *Conkle v. Astrue*, No. 07-6104, 2008 WL 4726234, *3 ( (Oct. 28, 2008) (unpublished) ("Because we cannot meaningfully review the ALJ's decision and because we do not weigh the evidence, we remand. . .to the Commissioner to consider and discuss the relevant evidence, to provide reasons for accepting or rejecting the evidence, and to apply correct legal standards") (citing *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)); SSR 96-8p, 1996 WL 374184, at *7 ("the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion"). The ALJ may, on remand, need to contact Dr. Loveridge or other medical providers to determine the level of restriction on Plaintiff's manipulative activities during a gout attack. *See* 20 C.F.R. § 416.919p(b) (requiring the ALJ to recontact the consultative examiner when his report is inadequate or incomplete).

        3.      <u>Standing/Walking Restrictions</u>

Plaintiff also argues that the ALJ erred in stating the standing/walking limitations in the RFC finding as a two hour range, rather than more specifically defining how much time Plaintiff could stand/walk on the job. He asserts that because of the imprecision of the standing/walking capacity, the question posed to the vocational expert was not precise enough to elicit accurate vocational testimony.

The Commissioner asserts in response that there is no error as the RFC specifically stated that Plaintiff's light work was limited by the ability to stand/walk four to six hours. I note, however, that the vocational expert was not advised of this in the hypothetical question. (Tr. 42.) Thus, it is unclear from the record whether the vocational expert believed from the hypothetical question that the person was able to perform up to six hours a day. This is also unclear from Dr. Loveridge's restriction, *i.e.*, he did not specify how often Plaintiff can stand/walk for four hours, how often he can tolerate standing and walking for six hours, and how often Plaintiff is limited to something in between. This is important as two of the jobs that the VE found Plaintiff can do are in the light category. Light work requires standing or walking most of the day, about 6 hours of an 8-hour day. SSR 83-14, 1983 WL 31254, at *4; SSR 83-20, 1983 WL 31249, *4.

Accordingly, I find that the ALJ erred because the hypothetical question was not precise as to Plaintiff's ability to stand/walk, and that this may have impacted the vocational expert's opinion. A remand is thus also required on this issue. *See Gay v. Sullivan*, 986 F.2d 1336, 1340 (10th Cir. 1993) (testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Commissioner's decision). Again, the ALJ may need to recontact Dr. Loveridge for clarification of his opinion on this issue. 20 C.F.R. § 416.919p(b).

    4.    <u>Mental Restrictions</u>

Finally, Plaintiff argues that the ALJ erred in the mental RFC finding which limits Plaintiff to simple, unskilled work. Plaintiff correctly asserts that none of his medical sources opined that he can perform simple, unskilled work. Rather, Plaintiff contends that is the

ALJ's own lay assessment of the type of work Plaintiff would be capable of performing. I agree. On remand, the ALJ must state the mental RFC finding (and resulting hypothetical question) with precision as to what Plaintiff's specific mental limitations are. *See Chapo*, 682 F.3d at 1290 n. 3 (expressing doubt that restriction to simple, unskilled work would be sufficient to capture distinct mental limitations recognized by treating provider, as "simple" is a "vague catch-all term" and the skill level of a job does not account for mental impairments); *Weiderholt v. Barnhart*, 121 F. App'x 833, 839 (10th Cir. 2005) (finding that the "relatively broad, unspecified nature of the description 'simple' and 'unskilled' did not adequately incorporate more specific findings regarding mental impairments).

III.   CONCLUSION

Based upon the foregoing, I find that the ALJ erred in the RFC assessment. I further find that this case must be reversed and remanded for further fact finding, rather than reversed for an immediate award of benefits as requested by Plaintiff. *See Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989) (outright reversal and remand for immediate award of benefits is appropriate only when additional fact finding would serve no useful purpose.). It is therefore

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding as directed in this Order pursuant to sentence four in 42 U.S.C. § 405(g).

Dated:  March 11, 2013

BY THE COURT:

s/ Wiley Y. Daniel  
Wiley Y. Daniel  
Senior United States District Judge